UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY RADOSZEWSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-1482-B |
| | § | |
| PLASTICS INDUSTRY | § | |
| ASSOCIATION, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Plastics Industry Association, Inc. ("PLASTICS")'s Motion to Transfer Venue (Doc. 6). For the following reasons, the Court **GRANTS** the Motion and **TRANSFERS** this case to the United States District Court for the District of Columbia.

## I.

## BACKGROUND[1]

This is a breach of contract case. Plaintiff Anthony Radoszewski and PLASTICS entered into a written employment agreement on July 29, 2019. Doc. 1-2, Pl.'s Original Pet., ¶ 7. PLASTICS hired Radoszewski as its President and Chief Executive Officer "in exchange for an annual base salary, the potential for an annual bonus, and other employment benefits." *Id.* ¶ 8.

On March 25, 2022, PLASTICS sent Radoszewski a letter stating that it was terminating him for cause. *Id.* ¶¶ 12–13. PLASTICS claimed that Radoszewski's "ongoing failure to relocate" to Washington, D.C., from Dallas, Texas, "constitute[d] a material breach of [his] [e]mployment [a]greement." *Id.* ¶ 13. PLASTICS asserted that Radoszewski indicated his willingness to relocate

---

[1] The Court derives the factual background from Plaintiff's Original Petition (Doc. 1-2).

to Washington, D.C. when he was interviewed for the position and had later assured PLASTICS' Board of Directors that he would relocate. *See* Doc. 6, Br. Supp., 3–4. This condition was not included in Radoszewski's employment agreement. Doc. 1-2, Pl.'s Original Pet., ¶ 13.

After his termination, Radoszewski demanded PLASTICS

> deliver payment in full of [Radoszewski's] severance comprised of [his] base salary for one year, which at the time of termination was $546,000.00; $30,000.00 for [his] 2021 bonus which was due and ow[ed] no later than March 1, 2022; unreimbursed business expenses in the amount of $7,000.00; and $26,250.00 for unpaid base salary.

*Id.* ¶ 15. In total, Radoszewski claims he is owed $609,250.00 plus additional benefits "defined as participation in the Defendant's retirement plans and the payment for [Radoszewski's] benefit of the greater of $18,500.00 or the maximum permissible in the Defendant's § 457(b) Plan[,] . . . less ordinary payroll tax withholdings." *Id.*

Radoszewski filed his Original Petition in Texas state court on May 27, 2022, bringing a breach-of-contract claim. *Id.* ¶¶ 17–22. On July 8, 2022, PLASTICS filed a separate suit against Radoszewski in the District Court for the District of Columbia over the same facts. Doc. 6, Br. Supp., 8; Compl., *PLASTICS Indus. Ass'n, Inc. v. Radoszewski*, No. 1:22-cv-01984-ABJ (D.D.C. July 8, 2022), ECF 1 [hereinafter PLASTICS' Complaint]. PLASTICS then removed Radoszewski's action to this Court on July 11, 2022. Doc. 1, Def.'s Notice Removal. PLASTICS then moved to transfer venue to the District Court for the District of Columbia. Doc. 6, Mot. The Motion is ripe for review, and the Court considers it below.

## II.

## LEGAL STANDARD

Even when venue is proper, a district court may transfer a civil action to another district or division if (1) the plaintiff could have brought that action there originally and (2) the transfer would be for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The movant must clearly establish both elements to "show good cause" for transfer. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15, 314 n.10 (5th Cir. 2008) (en banc).

As to the first prong, a plaintiff may initially bring an action in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).

As to the second prong, to determine if transfer would be for "the convenience of parties and witnesses, in the interest of justice," courts balance eight public-interest and private-interest factors. *See Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022). "The private[-]interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Id.* at 433–34 (internal quotations omitted). "The public[-]interest factors bearing on transfer are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws

[or in] the application of foreign law." *Id.* at 435 (internal quotations omitted). No one factor is dispositive, although cost of attendance to witnesses is generally regarded as the most important. *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 707, 711 (N.D. Tex. 2009) (Means, J.).

A plaintiff's choice of venue is not a "distinct factor" in the transfer analysis. *Volkswagen*, 545 F.3d at 314 n.10. Instead, it is "treated as a burden of proof question" and deference to this choice is reflected in the movant's burden to show good cause for the transfer. *See id.* "Less deference is given to a plaintiff's choice of forum "[w]hen the plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum." *Berlanga v. Basic Energy Servs., LP*, 2017 WL 4923876, at *4 (N.D. Tex. Oct. 30, 2017) (Ramirez, Mag. J.) (internal quotations omitted).

Thus, the balance of factors must clearly weigh in favor of transferring to the new venue. *Def. Distributed*, 30 F.4th at 433. "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id.*

## III.

## ANALYSIS

The Court finds that this case should be transferred pursuant to § 1404(a). To obtain transfer, PLASTICS must show that (1) this suit could have properly been filed in the District Court for the District of Columbia and that (2) the District Court for the District of Columbia is "clearly more convenient" when considering the private-interest and public-interest factors. *See Def. Distributed*, 30 F.4th at 433. Radoszewski does not dispute that this suit could have been properly filed in the District Court for the District of Columbia. Doc. 9, Resp., 3. Thus,

considering the preceding private-interest and public-interest factors below, the Court finds that PLASTICS has shown good cause for transfer to the District Court for the District of Columbia and **GRANTS** the Motion to Transfer Venue (Doc. 6).

    A.    *The Private-Interest Factors Weigh in Favor of Transfer*

The second and third factors weigh in favor of transfer, and the first and fourth factors are neutral. Thus, the Court finds that, as a whole, the private-interest factors support transfer.

    1.    <u>Relative Ease of Access to Sources of Proof</u>

The Court finds that the first private-interest factor—relative ease of access to sources of proof—is neutral to transfer. This factor requires "an actual showing of the existence of relevant sources of proof, not merely an expression that some sources likely exist in the prospective forum." *Def. Distributed*, 30 F.4th at 434. PLASTICS only states that all its "hard-copy documentation and back-up files are located . . . in the District of Columbia" and that it "is unaware of any documents relevant to this litigation that would be located in Dallas, Texas, aside from possibly Plaintiff's own email correspondence." Doc. 6, Br. Supp., 8. PLASTICS has not identified any specific relevant documents and does not explain how any of its documentation or files might be used in this litigation. *See id.* PLASTICS' conclusory assertions do not meet this factor's requirement. *See Def. Distributed*, 30 F.4th at 434 (finding a movant's assertion that "the sources of proof relevant to these issues . . . [were] all in New Jersey" to be insufficient). Since PLASTICS has not pointed to any discrete sources of proof in the District of Columbia and Radoszewski does not argue that this factor weighs against transfer, the Court finds this factor neutral.

### 2. Availability of Compulsory Process to Secure the Presence of Witnesses

The Court finds that the second private-interest factor—availability of compulsory process to secure the presence of witnesses—weighs in favor of transfer. A subpoena may command a person's attendance at a trial, hearing, or deposition

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). As the party seeking transfer, PLASTICS "has the burden to establish that [the District Court for the District of Columbia] has subpoena power over more unwilling witnesses than" this Court. *R2 Sols. LLC v. Target Corp.*, 2021 WL 2550908, at *3 (E.D. Tex. June 22, 2021).

PLASTICS has identified five nonparty witnesses that it intends to call but does not expect to be cooperative in the presentation of its case. Doc. 12, Reply, 6. PLASTICS asserts that the witnesses will "testify about the Board's clear communication of its expectation of relocation to the District of Columbia area and the institutional objectives that suffered directly consequent to the CEO's failure to follow the Board's clear direction." *Id*. Three of these witnesses live or work in the District of Columbia, and the other two witnesses live or work elsewhere but have no connection to Texas. *Id*. Radoszewski has not identified any unwilling witnesses that he intends to call at trial. *See* Doc. 9, Resp., 10–11.

The Court finds that the District Court for the District of Columbia has subpoena power over more unwilling witnesses than this Court. Because the Court is more than 1,300 miles from the District of Columbia, it does not have subpoena power over any of PLASTICS' witnesses. *See*

Fed. R. Civ. P. 45(c)(1). However, the District Court for the District of Columbia has subpoena power over at least three. *See id.* Thus, this factor weighs in favor of transfer.

### 3. Cost of Attendance for Willing Witnesses

The Court finds that the third private-interest factor—cost of attendance for willing witnesses—weighs in favor of transfer. Courts will give more weight to the convenience of nonparty witnesses than party witnesses. *See Ternium Int'l U.S.A. Corp. v. Consol. Sys., Inc.*, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) (Fish, J.) ("The convenience of witnesses who are employees of the party seeking transfer is entitled to less weight because that party will be able to compel their testimony at trial."). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen*, 545 F.3d at 317 (internal quotations omitted). This factor requires "the moving party [to] identify specific witnesses and outline the substance of their testimony." *BNSF Ry. Co.*, 667 F. Supp. 2d at 711.

PLASTICS has identified twelve witnesses it intends to call. *See* Doc. 12, Reply, 5. Of PLASTICS' twelve total witnesses, seven are party witnesses, and five are nonparty witnesses. *See id.* at 5–6. Regarding the seven party witnesses, two live or work in the District of Columbia, and five regularly return there to perform duties for PLASTICS. *Id.* at 5. Concerning the five nonparty witnesses, three live or work in the District of Columbia, and two live elsewhere.[2] *Id.* at

---

[2] PLASTICS states that two nonparty witnesses, Tamara O'Neill and a corporate representative of SHIFT Consulting, "do not work or reside in the Washington, D.C., area." Doc. 12, Reply, 6. Because PLASTICS does not provide the Court further information to weigh the convenience of either venue to these witnesses, the Court treats these two witnesses as neutral in its analysis.

6. On the other hand, Radoszewski has indicated that he intends only to call himself as a witness. *See* Doc. 9, Resp., 13.

PLASTICS' three nonparty witnesses in the District of Columbia weigh the strongest in favor of transfer. *See Ternium*, 2009 WL 464953, at *4. The Court notes that the inconvenience to these witnesses is greatly compounded because the District of Columbia is over 1,300 miles from the Court. *See Volkswagen*, 545 F.3d at 317; Doc. 6, Br. Supp., 7. The two party witnesses in the District of Columbia also weigh in favor of transfer, though less forcefully. *See Ternium*, 2009 WL 464953, at *4. Likewise, while the Court accords less weight to the five party witnesses who regularly travel to the District of Columbia to perform duties for PLASTICS, those witnesses still weigh slightly in favor of transfer because PLASTICS would have the option of scheduling their preexisting travel plans to coincide with hearings or depositions in the District of Columbia to reduce costs. Finally, the Court considers Radoszewski's convenience, which weighs against transfer.

Overall, the Court finds that PLASTICS' seven party witnesses and the three nonparty witnesses, collectively, would suffer substantially more inconvenience in traveling to Dallas than Radoszewski would suffer in traveling to the District of Columbia Therefore, this factor weighs in favor of transfer.

    <u>4.</u>    <u>Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive</u>

The Court finds that the fourth private-interest factor—all other practical problems that make trial of a case easy, expeditious, and inexpensive—is neutral to transfer. "This factor encompasses concerns rationally based on judicial economy." *Seagen Inc. v. Daiichi Sankyo Co.*, 546 F. Supp. 3d 515, 532 (E.D. Tex. 2021). PLASTICS argues that transferring this case to consolidate it with the action that it filed against Radoszewski in the District Court for the

District of Columbia causes this factor to weigh in favor of transfer. Doc. 6, Br. Supp., 8. However, PLASTICS chose to file another lawsuit on the same facts in the District Court for the District of Columbia after being sued first in Texas. PLASTICS' Complaint, *supra*. While the Court acknowledges that consolidation would be to PLASTICS' convenience, PLASTICS has brought upon itself any inconvenience that would stem from duplicative litigation. *See Seagen*, 546 F. Supp. 3d at 532 ("DSC *chose* to file an identical lawsuit in Delaware *after* being sued in Texas. DSC's choice to do so is itself an act *against* judicial economy.").

Radoszewski alleges that this factor weighs against transfer because the potential jury pool in the District of Columbia has been prejudiced against him by "numerous media articles" that "were consistently negative toward [him]." Doc. 9, Resp., 13–14. However, despite alleging the existence of "numerous media articles," Radoszewski only identifies one by name. *See id*. The Court cannot assess such a conclusory allegation without further evidence. Additionally, PLASTICS notes that the only article Radoszewski identifies was published by *Plastics News*—a Detroit-based publication with a nationally distributed readership—without providing any evidence of its readership demographics.[3] Doc. 12, Reply, 7. Thus, a potential juror in the Northern District of Texas could be equally as likely to be a reader of *Plastics News* as a potential juror in the District of Columbia. *Id.*

The Court agrees with PLASTICS, rejects both PLASTICS' and Radoszewski's arguments, and finds that this factor is neutral.

---

[3] Despite claiming that "numerous media articles . . . appeared in plastics trade association publications," Radoszewski does not identify any other articles or publications for the Court to consider, outside of referencing a single article by *Plastics News*. Doc. 9, Resp., 14. Because Radoszewski does not provide the Court sufficient information to analyze the effect of these unidentified articles on the District of Columbia's jury pool, the Court treats these unidentified articles as neutral in its analysis.

B.       *The Public-Interest Factors Weigh in Favor of Transfer*

The first, second, and third factors weigh in favor of transfer, and the fourth factor is neutral. Thus, the Court finds that, as a whole, the public-interest factors support transfer.

1.       <u>Administrative Difficulties Flowing from Court Congestion</u>

The Court finds that the first public-interest factor—administrative difficulties flowing from court congestion—weighs in favor of transfer. "This factor takes into consideration the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue." *BNSF Ry. Co.*, 667 F. Supp. 2d at 712 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (5th Cir. 2009)). PLASTICS maintains that this factor weighs in favor of transfer because in the twelve-month period ending on March 31, 2022, the Northern District of Texas had 7,497 filings while the District Court for the District of Columbia had only 4,161 filings. Doc. 6, Br. Supp., 8–9. Conversely, Radoszewski counters that the Northern District of Texas, despite its larger docket, progressed civil cases from filing to trial during that period at an average of 20.2 months faster than the District Court for the District of Columbia. *See* Doc. 9, Resp., 16.

The Court notes that this factor is not a "race between the courts" because "[e]ach case is unique, and whether . . . the case would progress more rapidly here or in [the transferee] district is largely a matter of speculation." *Eight One Two, LLC v. Purdue Pharma L.P.*, 2014 WL 7740476, at *4 (N.D. Tex. May 16, 2014) (Kinkeade, J.). Indeed, PLASTICS points out that the average time from filing to trial does not account for the characteristics of the cases on the District Court for the District of Columbia's docket. *See* Doc. 12, Reply, 8. Likewise, "case-disposition statistics may not always tell the whole story." *See Genentech*, 566 F.3d at 1347.

As a result, this Court has previously used the metric of weighted filings per judgeship to inform its determinations regarding this factor. *See, e.g.*, *Est. of Bentley v. Marriott Int'l Inc.*, 2015

WL 5836256, at *5 (N.D. Tex. Oct. 2, 2015) (Boyle, J.). This weighted metric accounts for the fact that different types of civil and criminal actions take different amounts of time to resolve. To accomplish this, weighted filing statistics assign different weights to different types of cases:

> Average civil cases or criminal defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assessed (e.g., a death-penalty habeas corpus case is assigned a weight of 12.89); and cases demanding relatively little time from judges receive lower weights (e.g., an overpayment and recovery cost case involving a defaulted student loan is assigned a weight of 0.10).

*Explanation of Selected Terms*, U.S. Cts., https://www.uscourts.gov/sites/default/files/explanation_of_selected_terms_march_2022_0.pdf (last visited Nov. 4, 2022). By quantifying case complexity, weighted filing statistics give a more complete picture of docket congestion than simple caseload statistics can provide. During the twelve-month period ending on June 30, 2022, The Northern District of Texas had 576 weighted filings per judgeship while the District Court for the District of Columbia had only 286. *United States District Courts—National Judicial Caseload Profile*, U.S. Cts. (June 30, 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf. Because the District Court for the District of Columbia has nearly 300 fewer weighted filings than the Northern District of Texas, the Court finds that the District Court for the District of Columbia is less congested overall. *See id.* Therefore, the Court finds that this factor weighs in favor of transfer.

  2. <u>Local Interest in Having Localized Interests Decided at Home</u>

The Court finds that the second public-interest factor—the local interest in having localized interests decided at home—weighs in favor of transfer. This factor considers the "significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed*, 30 F.4th at 435. Courts consider the "location of the injury, witnesses, and the

Plaintiff's residence." *Id.* PLASTICS argues that this litigation is localized to the District of Columbia because Radoszewski negotiated his employment agreement in the District of Columbia and agreed to become an employee of a District of Columbia company. *See* Doc. 6, Br. Supp., 9. Radoszewski responds that there is a "deep relation" between the Northern District of Texas and himself because he resides there. Doc. 9, Resp., 16–17.

Radoszewski's Original Petition claims that his injury stems from PLASTICS' refusal to pay him just over $600,000. *See* Doc. 1-2, Pl.'s Original Pet., ¶ 15. Radoszewski does not argue that payment was to be in a particular location; thus, this injury does not appear localized to a specific venue. *See id.* ¶¶ 17–22. And while Radoszewski resides in Texas, he regularly traveled to the District of Columbia to conduct business for PLASTICS and oversee PLASTICS' employees. Doc. 6, Br. Supp., 3–5. He traveled to the company; the company did not travel to him. *See id.* Additionally, most of the witnesses are located in the District of Columbia *See* Doc. 12, Reply, 4–5. Accordingly, the Court finds that this dispute is centered in the District of Columbia and that this factor weighs in favor of transfer.

      3.      Familiarity of the Forum with the Governing Law

The Court finds that the third public-interest factor—familiarity of the forum with the governing law—weighs in favor of transfer. The parties agree that District of Columbia law governs their contract and, thus, this breach-of-contract dispute. *See* Doc. 6, Br. Supp., 10; Doc. 9, Resp., 18. PLASTICS argues that the District Court for the District of Columbia is better positioned than the Court to interpret the applicable District of Columbia law. Doc. 6, Br. Supp., 10. On the other hand, Radoszewski argues that District of Columbia contract law is "similar to if not identical to" Texas contract law. Doc. 9, Resp., 18. However, Radoszewski cites no support for this assertion, and the Court will not engage in a comparative survey of District of Columbia

and Texas contract law to confirm it. *See id.* The Court is convinced that the District Court for the District of Columbia interprets District of Columbia contract law more often than this Court does. As such, this factor weighs in favor of transfer.

    4.    <u>Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law</u>

The Court finds that the fourth public-interest factor—the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—is neutral to transfer. The parties agree that District of Columbia law governs their dispute, rendering this factor neutral. *See* Doc. 6, Br. Supp., 10; Doc. 9, Resp., 18.

C.    *Radoszewski's Choice of Forum Is Entitled to Deference*

Having analyzed the factors, the Court now determines the appropriate amount of weight to be given to Radoszewski's choice of forum. A court will afford less deference to a plaintiff's choice of forum "[w]hen the plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum." *Berlanga, LP*, 2017 WL 4923876, at *4 (internal quotations omitted). Here, while Radoszewski has chosen his home forum, most of the operative facts occurred outside the forum. For instance, Radoszewski's employment agreement was negotiated in Washington D.C. *See* Doc. 6, Mot., 3. Further, Radoszewski conducted most of his duties as Chief Executive Officer of PLASTICS from Washington D.C. *See id.* at 6–7. Because of these conflicting factors, Radoszewski's choice of forum is entitled to some deference.

D.    *The Balancing Factors Support Transfer*

While the Court affords some deference to Radoszewski's choice of forum, the Court finds that PLASTICS has shown good cause for transfer by "clearly demonstrat[ing] that a

transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *See Def. Distributed*, 30 F.4th at 433 (quoting *Volkswagen*, 545 F.3d at 315). Five factors weigh in favor of transfer and three are neutral. Furthermore, the cost of attendance for willing witnesses is particularly significant in the Court's analysis. *See BNSF Ry. Co.*, 667 F. Supp. at 711. Here, it weighs decidedly in favor of transfer. As a result, the Court concludes that PLASTICS has met its burden to show that the District Court for the District of Columbia is "clearly more convenient." *See Def. Distributed*, 30 F.4th at 433.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** PLASTICS' Motion to Transfer Venue (Doc. 6). This case is hereby **TRANSFERRED** to the United States District Court for the District of Columbia. The Clerk of Court shall effectuate the transfer according to the usual procedure.

**SO ORDERED.**

**SIGNED: November 29, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE